JOHN ARNOLD EXECUTRAK SYSTEMS, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
John Arnold Executrak Systems, Inc. v. Commissioner
Docket No. 25394-88
United States Tax Court
T.C. Memo 1990-6; 1990 Tax Ct. Memo LEXIS 6; 58 T.C.M. (CCH) 1129; T.C.M. (RIA) 90006; January 4, 1990
Theodore L. Craft, for the petitioner. Donald Glasel, for the respondent. WOLFE
MEMORANDUM FINDINGS OF FACT AND OPINION WOLFE, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b) of the Internal Revenue Code and Rule 180 et seq. [1] The case is before the Court on petitioner's Motion To Dismiss For Lack Of Jurisdiction. The petition in this case was filed by attorneys initially employed by Laurel Associates, a limited partnership in which petitioner had an interest. The issue for decision is whether the petition was filed with the express or implied authority of petitioner, so as to confer jurisdiction on this Court to decide petitioner's tax liabilities for the 1977, 1978, and 1979 tax years. *8 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and stipulation of settled issues and attached exhibits are incorporated herein by this reference. Petitioner is a management consulting corporation located in Waltham, Massachusetts. John Arnold (Arnold) is its president and sole shareholder. Arnold started this consulting business in 1968 and previously had been Director of International Operations for another consulting company. In 1977, Arnold, acting for petitioner, purchased a limited partnership interest in Laurel Associates, an equipment leasing partnership. Integrated Resources, Inc. was the general partner. Under the partnership agreement each of the general partners was irrevocably appointed attorney-in-fact for the limited partners with power "to make, execute, acknowledge, deliver, swear to, and file * * * all * * * filings with agencies of the federal government; of any state or local government, or of any other jurisdiction which the General Partner considers necessary or desirable for Partnership purposes." In June 1985, Thomas Sullivan (Sullivan), petitioner's independent accountant, received an examination *9 report from the IRS District Director for Boston proposing adjustments to petitioner's 1977, 1978, and 1979 tax returns. The proposed adjustments were based upon disallowance of deductions and credits reported by petitioner with respect to its limited partnership interest in Laurel Associates for those years. Sullivan forwarded this report to Daniel Abrams (Abrams), an attorney with the firm of Rosenman, Colin, Freund, Lewis & Cohen (Rosenman & Colin), attorneys for the limited partnership. Sullivan requested that Abrams "review the information and advise me as to the course of action which will be taken so that I may notify my client." On July 21, 1985, Arnold, at the request of Integrated Resources, executed a Power of Attorney and Declaration of Representative on behalf of petitioner on Form 2848 appointing Sullivan and another accountant from Sullivan's firm as petitioner's attorneys-in-fact in regard to corporate tax matters for the years 1977, 1978, and 1979. A line was left blank for the insertion of the name of a New York attorney as a third representative to act on behalf of petitioner. On August 22, 1985, Abrams of Rosenman & Colin signed his name in the space provided *10 and Avery Stok of the same firm signed the form on the line below Abrams' signature. They then returned a copy of the signed Power of Attorney to Sullivan. Sullivan did not object to the added signatures. By letter dated October 25, 1985, Sullivan provided Arnold with a written report summarizing a prior conversation concerning the status of the Laurel Associates tax problem. He noted that petitioner had received a 30-day letter and that Avery Stok of Rosenman & Colin was the person they were "dealing with" in regard to the Laurel Associates items. The report also stated that Avery Stok had advised that they wait until petitioner received a 90-day letter before taking action and that the options at that point would be to settle or to take the matter to Tax Court. Sullivan also observed that "The alternative of taking the case to tax court would involve the preparation of a protest [petition] by the attorney and representation in the tax court." He observed further that other Laurel Associates limited partners already had decided to litigate in the Tax Court, and that the first case to be heard probably would bind the related cases. The letter concluded with the comment that *11 "After discussing the matter with you, we decided to proceed with the tax court route. Accordingly, as soon as we receive the 90-day letter, we should notify Mr. Stok so that he may start the preparation of the necessary documents for the protest [petition]." On August 8, 1987, the Boston District Director issued a second 30-day letter pertaining to items still unresolved on petitioner's 1977-1979 returns. On August 13, 1987, Sullivan discussed the letter with Abrams by phone and then mailed it to him. The following day Sullivan wrote to the District Director's office advising that "The other issue, namely Laurel Associates, is being represented in tax court by a New York law firm, which was retained by the general partner." Sullivan requested that the assessment against petitioner regarding Laurel Associates be held in suspense until the Tax Court disposed of the case. On February 17, 1988, Laurel Associates sent petitioner Schedule K-1 of the partnership's 1987 tax return, accompanied by a letter of transmittal which informed the partners that Rosenman & Colin, as counsel to the partnership, had agreed to a stipulation of settlement of the 1977-1979 issues. This settlement *12 tied the cases involving Laurel Associates to the outcome of the case of Friendship Dairies, Inc. v. Commissioner, then pending before the Tax Court. Friendship Dairies, Inc. v. Commissioner, 90 T.C. 1054, was decided in favor of respondent on May 23, 1988. Laurel Associates informed the limited partners of the outcome on July 25, 1988, and advised the partners that counsel for Friendship Dairies was considering whether to appeal. The appeal period expired on August 22, 1988, without the taxpayer taking an appeal, and on October 26, 1988, the limited partners were so notified. Early in July 1988, Sullivan received on behalf of petitioner a statutory notice of deficiency (the 90-day letter) dated June 30, 1988. He called Integrated Resources personnel on July 6 for advice on what to do with the notice. At their suggestion he forwarded the statutory notice to Louis Posner (Posner) at Integrated Resources with the notation that he acted " so that you may take the necessary steps to protect my client's rights." Sullivan also inquired whether Integrated Resources intended to accept the decision in Friendship Dairies and, if so, whether his client should *13 pay the deficiency now to stop the running of interest. Sullivan's letter of transmittal concluded with a request that Integrated Resources "advise me as to what course of action you will be following." On September 19, 1988, on Sullivan's advice but without consulting Integrated Resources or Rosenman & Colin, petitioner paid the deficiency of $ 77,657 as determined in the notice of deficiency dated June 30, 1988. This figure did not include interest or additions to tax. On September 27, 1988, attorneys employed by Integrated Resources filed a petition for a redetermination of petitioner's 1977-1979 tax deficiencies. The petition was signed by Isaac Zisselman of Integrated Resources and by Abrams of Rosenman & Colin. A copy of the petition was sent to Sullivan with a letter of transmittal dated September 16, 1988. On December 1, 1988, Sullivan sent Posner at Integrated Resources a letter informing him that petitioner considered the filing of the petition on petitioner's behalf to be outside the scope of his or Integrated Resources' authority. On December 15, 1988, petitioner filed the motion to dismiss which is now before this Court. OPINION Petitioner contends that this *14 Court lacks jurisdiction to bind petitioner by any decision because the petition was filed without proper authorization from petitioner. Hoj v. Commissioner, 26 T.C. 1074 (1956). Respondent's position is that the attorneys who filed the petition in this case on behalf of petitioner were authorized to do so. Neither provisions of the Internal Revenue Code nor Rules of this Court prescribe a method whereby a petitioner confers authority on an attorney to institute proceedings in this Court. See section 7452; Rule 24; see also Sorrentino v. Ross, 425 F.2d 213 (5th Cir. 1970). Instead, the authority of an attorney to act on behalf of a taxpayer has been decided as a factual question under principles consistent with the common law of agency. Adams v. Commissioner, 85 T.C. 359, 369-372 (1985); Kraasch v. Commissioner, 70 T.C. 623, 627-629 (1978). In determining the scope of an agent's authority, the primary rule is that an agent is authorized to do only that which he would reasonably believe that his principal wanted him to do in the light of the principal's manifestations to him. 1 Restatement, Agency 2d, sec. 33 *15 (1957). The manifestations may consist of the principal's express statements to the agent, made either orally or in writing, but authority may also be derived by implication from the principal's words or deeds. Restatement, supra at sec. 26. Authority is evaluated objectively to encompass that which a reasonable person in the position of the agent would conclude that the principal intended him to do, regardless of whether that is what the principal actually intended. Restatement, supra at sec. 26, comment a. An authorization is interpreted in light of all accompanying circumstances, including the relationship of the parties, the general usages of business, the nature of the subject matter, and the facts of which the agent has notice concerning objects the principal desires to accomplish. Restatement, supra at sec. 34. The Laurel Associates limited partnership agreement provides that the general partner shall have the power and right to "employ, engage, retain or deal with any persons, firms or corporations to act as * * * lawyers or in such other capacity as the General Partner may deem necessary or desirable * * *." Additionally, under the partnership agreement *16 each limited partner irrevocably appointed each general partner as his attorney with power to perform a variety of acts, including making any filings with agencies of the Federal government "which the General Partner considers necessary or desirable for Partnership purposes." John Arnold signed the Laurel Associates limited partnership agreement for petitioner. Arnold testified that he never had read the partnership agreement which he signed on petitioner's behalf and that he did not have a copy of it. Arnold testified that he relied upon his tax attorney, Fred Dellorfano (Dellorfano), to read the documents for him and advise him. He also testified that he relied on Sullivan. Arnold explained that he discussed the proposed investment with Dellorfano and Sullivan and decided to reject it because of the requirement that he personally guarantee a letter of credit. Later, according to Arnold, while he was on a ski vacation, Dellorfano called to tell him that the requirement of a letter of credit had been removed and to recommend the investment. The documents for signature were sent to Arnold, and he signed them and returned them to Dellorfano. Arnold admitted that he never had written *17 to Dellorfano to request copies of the Laurel Associates documents and that it was his own fault that he did not have copies of the documents. Sullivan also said he never had read the Laurel Associates partnership agreement. He said he participated in the meeting with Dellorfano, Arnold, and a representative of Integrated Resources at which the transaction was considered and rejected because of the letter of credit requirement. Dellorfano was not called as a witness. When he signed the Laurel Associates partnership agreement Arnold was an experienced business executive. He had the benefit of advice of tax counsel who had familiarized himself with this transaction and also had advice from an accountant and financial advisor of his own choice. Under the Laurel Associates partnership agreement Arnold granted the general partner broad authority to act for petitioner and to employ attorneys to do so. We are convinced that Arnold knew what he was doing when he signed the partnership agreement. In 1985, Arnold executed Form 2848 naming Sullivan, Abrams and Avery Stok as petitioner's representatives in dealing with the IRS as to corporate tax matters for the years 1977, 1978, and *18 1979. Petitioner never revoked this power nor gave counsel for the limited partnership any indication that their representation was conditioned on prior approval of their actions. Additionally, Sullivan consistently confirmed the authority of Laurel's attorneys at Rosenman & Colin and Integrated Resources to represent petitioner. Arnold never has raised any question about Sullivan's authority, but has emphasized his reliance on Sullivan as his and petitioner's tax and financial advisor. In his letter of October 25, 1985, Sullivan explained to Arnold his understanding of the procedures for litigation in the Tax Court. He pointed out that other cases involving Laurel Associates already had been docketed so "the first case to be heard will probably bind all the related cases that are waiting to litigate this issue. We would be one of those cases." Like any careful professional advisor, Sullivan summarized in writing the course of action which he intended to follow in accordance with his conference with his client: After discussing the matter with you, we decided to proceed with the tax court route. Accordingly, as soon as we receive the 90-day letter, we should notify Mr. Stok *19 so that he may start the preparation of the necessary documents for the protest [petition]. Although Sullivan apparently confused a petition to the Tax Court with a protest to respondent, his letter clearly shows his understanding that petitioner would file a petition with the Tax Court, even though the case would be bound by the decision in a case filed earlier. Sullivan explicitly told Arnold that he was relying upon Avery Stok at Rosenman & Colin and that "He seems to be very knowledgeable in the area and well versed in the law surrounding the case of Laurel Associates." When he received the deficiency notice addressed to petitioner, Sullivan followed the course of action described in his October 25, 1985, letter to Arnold. The statutory notice of deficiency and accompanying waiver clearly describe the two choices available to a taxpayer: to petition for a redetermination in the Tax Court, or to pay the deficiency, with the option of suing for a refund in District Court or the Claims Court thereafter. We note that under section 6213(b)(4), a taxpayer's payment of the deficiency after the mailing of the statutory notice of deficiency does not deprive the Tax Court of *20 jurisdiction. By sending the deficiency notice to the representative of the general partner with the comment that he did so "so that you may take the necessary steps to protect my client's rights," Sullivan led counsel for the limited partnership to draw the reasonable conclusion that Sullivan wanted them to petition for a redetermination. Sullivan previously had told Arnold that when he received the 90-day letter, he would rely on Avery Stok at Rosenman & Colin to file the necessary documentation to commence suit in the Tax Court. Sullivan did what he had said he would do and, in accordance with the previous decision by Sullivan and Arnold, the lawyers did what was necessary to "proceed with the tax court route." Petitioner argues that because the unfavorable decision of this Court in Friendship Dairies Inc. v. Commissioner, supra, precluded a favorable outcome to a suit by petitioner, the filing of the suit was utterly frivolous and axiomatically unauthorized. On the contrary, by filing a petition, petitioner enabled counsel and respondent readily to negotiate decision documents and closing agreements to modify the tax treatment of income earned by the partnership *21 in years subsequent to the ones covered by the statutory notice of deficiency. In his testimony Abrams explained that if a petition had not been filed, respondent would have assessed deficiencies at the end of the 90-day statutory period. Abrams' explanation of his reason for filing the petition essentially was that he intended to protect petitioner's ability to conduct the negotiations with respondent which Sullivan testified (and explained to his client) would occur after issuance of the statutory notice. Counsel acted to protect petitioner's interests, as he had been instructed to do. There is no basis for petitioner's contention that counsel's acts were so frivolous as to be necessarily unauthorized. Petitioner also argues that Sullivan's request that Integrated Resources "advise me as to what course of action you will be taking" constitutes a serious limitation on counsel's authority to institute a suit. This formulaic statement is not sufficient to advise reasonable attorneys in the position of counsel in this case of any supposed obligation to obtain petitioner's prior consent to the specific action designed to protect his interests. Arnold and Sullivan testified that *22 they expected the attorneys to seek instructions from Arnold before taking actions with respect to petitioner, but this self-serving testimony is unconvincing. Under the circumstances of this case, the attorneys initially employed by Laurel Associates, upon whom Sullivan had been relying and with whom he had been dealing in this matter for several years, had authority to bring suit in this Court for a redetermination of the 1977-1979 tax deficiencies arising from petitioner's interest in the partnership. Accordingly, petitioner's motion to dismiss for lack of jurisdiction is denied. An appropriate order will be entered. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986 as in effect for the date the petition was filed, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩